IN THE SUPREME COURT OF THE STATE OF DELAWARE

LARRY J. SARTIN, III §
§
    Defendant Below, § No. 128, 2014
    Appellant, §
§
    v. § Court Below—Superior Court
§ of the State of Delaware,
STATE OF DELAWARE, § in and for Kent County
§ Cr. Nos. 1103008787,
    Plaintiff Below, § 1103008790
    Appellee. §

Submitted: September 26, 2014
Decided: October 21, 2014

Before **HOLLAND**, **RIDGELY**, and **VALIHURA**, Justices.

# **O R D E R**

This 21st day of October 2014, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:

1. In 2011, the appellant, Larry J. Sartin, III, was indicted by Kent County and New Castle County grand juries for multiple felonies arising from burglaries and robberies in Kent County and New Castle County. On August 18, 2011, Sartin pled guilty in the Kent County Superior Court to one count of Robbery in the First Degree, two counts of Robbery in the Second Degree, and one count of Burglary in the Second Degree. The plea agreement resolved cases in Kent County and New Castle County.

2. In the Truth-In-Sentencing Guilty Plea Form and during the plea colloquy with the Superior Court, Sartin agreed that he was a habitual offender under 11 *Del. C.* § 4214(a). The State and Sartin agreed to recommend that Sartin serve a total of twenty-one years of Level V incarceration. The State also agreed to dismiss the remaining charges in Kent County and New Castle County. On August 18, 2011, Sartin was declared a habitual offender under 11 *Del. C.* § 4214(a) and sentenced as follows: (i) for Robbery in the First Degree, twenty-five years of Level V incarceration, suspended after three years for decreasing levels of supervision; (ii) for Burglary in the Second Degree, eight years of Level V incarceration; and (iii) for each of the counts of Robbery in the Second Degree, five years of Level V incarceration. Sartin did not appeal his convictions or sentence.

3. On August 10, 2012, Sartin filed his first motion for postconviction relief. The grounds for this motion were: (i) ineffective assistance of counsel based upon counsel's failure to investigate Sartin's mental health issues; (ii) ineffective assistance of counsel based upon counsel's failure to communicate; (iii) ineffective assistance of counsel based upon counsel's failure to recognize Sartin's use of prescribed mental health psycho-tropic medications before the plea colloquy and acceptance of the guilty plea; and (iv) diminished capacity. The postconviction motion was referred to a Superior Court Commissioner, who gave

2

Sartin the opportunity (and an extension) to submit a memorandum of law in support of his motion, requested an affidavit from Sartin's former counsel, asked the State to submit a response to the motion, and set a deadline for Sartin to submit a reply to his former counsel's affidavit and the State's response. Sartin did not submit an opening memorandum of law, but did file a reply to his former counsel's affidavit.

4. After receiving the submissions of the parties, the Commissioner issued a Report and Recommendation. The Commission considered the merits of Sartin's ineffective assistance of counsel claims and concluded that they lacked merit and were barred by Superior Court Criminal Rule 61(i)(3). The Superior Court conducted a *de novo* review of the proceedings, adopted the Commissioner's Report and Recommendation, and denied Sartin's motion for postconviction relief. This appeal followed.

5. Sartin filed a motion for a transcript of the plea and sentencing hearing at State expense, which the Superior Court denied. The State included a copy of the transcript in the appendix with its answering brief on appeal. Sartin also claims to have filed a motion for appointment of counsel in the Superior Court, but the docket does not reflect such a motion. Sartin's request for appointment of counsel in this Court and a remand to the Superior Court was denied.

3

6. On appeal, Sartin first argues that the Superior Court abused its discretion and violated his constitutional rights when it denied his motion for postconviction relief as procedurally barred. This Court reviews the Superior Court's denial of a Superior Court Criminal Rule 61 ("Rule 61") motion for postconviction relief for abuse of discretion.[1] Questions of law or claims of a constitutional violation are reviewed *de novo*.[2]

7. Sartin's postconviction claims are based primarily on his assertion that his counsel was ineffective. Sartin claims his counsel was ineffective because: (i) he failed to investigate Sartin's mental health issues; (ii) he failed to communicate with Sartin; and (iii) he failed to recognize that Sartin was under the influence of prescribed medications at the time of his guilty plea. Sartin claims that but for his counsel's ineffective assistance, he would have rejected the plea offer and insisted on proceeding to trial with a mental illness defense. Sartin also appears to contend that he suffered from diminished capacity at the time of his guilty plea and could not knowingly, intelligently, and voluntarily accept a guilty plea.

8. To prevail on a claim of ineffective assistance of counsel after entry of a guilty plea, a defendant must demonstrate that his defense counsel's

---

[1] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[2] *Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010).

4

representation fell below an objective standard of reasonableness and there is a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial.[3]   There is a strong presumption that counsel's representation was professionally reasonable.[4]   Conclusory and unsupported claims of prejudice are insufficient to establish ineffective assistance; a defendant must make and substantiate concrete claims of actual prejudice.[5]

9.      Sartin's conclusory allegations of ineffective assistance of counsel do not establish that his counsel's representation was objectively unreasonable or prejudicial.   Contrary to Sartin's contentions, the record reflects that Sartin's counsel investigated Sartin's mental health issues.   Sartin's counsel referred Sartin for a psycho-forensic evaluation, which included an examination of Sartin's history of substance abuse and mental health problems.   Although the box next to the question asking whether Sartin had even been a patient in a mental hospital was checked "no" in the Truth-In-Sentencing Guilty Plea Form, there was also a handwritten notation of "98'" next to that question.[6]   Sartin's counsel informed the

---

[3] *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Allbury v. State*, 551 A.2d 53, 59 (1988).

[4] *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984).

[5] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1986).

[6] Appendix to State's Answering Brief at B-22.

Superior Court at the plea colloquy that Sartin had been treated at a mental hospital in 1998.

10. To the extent Sartin claims his counsel's lack of investigation deprived him of a mental illness defense, Sartin's counsel stated in his affidavit that there was no indication Sartin's mental health issues rose to the level of a viable defense. Instead, Sartin's counsel tried to use the issues to lessen the severity of Sartin's sentence and to ensure that treatment began while Sartin was incarcerated. Sartin does not identify any authority suggesting a mental illness defense would likely have succeeded at trial.

11. There is also no merit to Sartin's contention that his counsel failed to communicate with him. According to the affidavit of Sartin's counsel, he met with Sartin five times in addition to case reviews. Sartin indicated in the Truth-In-Sentencing Guilty Plea Form that he was his satisfied with his counsel's representation. During the plea colloquy, Sartin told the Superior Court that he had discussed the matter fully with his counsel and was satisfied that his counsel had done all that he could reasonably do for him. Absent clear and convincing evidence to the contrary, Sartin is bound by these representations.[7]

12. Sartin's contention that his counsel was ineffective for failing to recognize that he was under the influence of psychotropic medications at the time

---

[7] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

of his guilty plea is also contradicted by the record. Sartin's prescription for lithium was noted in the Truth-In-Sentencing Guilty Plea Form. At the plea hearing, Sartin's counsel informed the Superior Court that Sartin was on lithium while in custody and that Sartin was focused and able to discuss the matter cogently in all of their discussions. By pleading guilty, Sartin was able to avoid a sentence of life imprisonment. We conclude that Sartin's ineffective assistance of counsel claims are without merit and that the Superior Court did not err in rejecting those claims.

13. Sartin's conclusory assertion of diminished capacity resulting in an involuntary guilty plea is not supported by the record. As discussed above, the parties and Superior Court were informed of Sartin's history of mental health and substance abuse issues, Sartin's treatment at a mental hospital in 1998, and his lithium prescription. Sartin's counsel told the Superior Court that Sartin was focused and cogent in their discussions and that he believed Sartin was entering into the plea knowingly, intelligently, and voluntarily.

14. The transcript of the plea hearing and sentencing does not suggest otherwise. During the plea colloquy, Sartin told the Superior Court that he understood the charges he was pleading guilty to, he understood that he faced a maximum penalty of life in imprisonment because he was a habitual offender and that there was a minimum mandatory penalty of twenty-one years, he freely and

7

voluntarily pled guilty because he was guilty of the offenses, he understood that he was waiving the constitutional rights listed in the Truth-in-Sentencing Guilty Plea Form, which included the right to present evidence in his defense, and he had discussed the matter fully with his counsel. Sartin also expressed remorse to the victims of his crimes. The transcript does not reflect that Sartin was unable to answer or had any difficulty answering the Superior Court's questions. Absent clear and convincing evidence to the contrary, Sartin is bound by his representations in the Truth-In-Sentencing guilty plea form and his sworn statements to the judge during the guilty plea colloquy.[8] There is no clear and convincing evidence that Sartin's mental health or lithium prescription rendered his guilty plea involuntary. We therefore conclude that the Superior Court did not err in denying Sartin's motion for postconviction relief.

15. Sartin next argues that the Superior Court erred in denying his request for a transcript of his plea and sentencing hearing. A copy of the transcript was included in the appendix accompanying the State's answering brief, making Sartin's transcript claim moot.[9]

16. Finally, Sartin argues that the Superior Court erred by not appointing counsel to represent him in connection with his first motion for postconviction

---

[8] *Id.*

[9] Despite the inclusion of the transcript, Sartin chose not to file a reply brief.

relief. Although Sartin claims he filed a motion for appointment for counsel in the Superior Court after his motion for postconviction relief was denied, there is no sign in the record of such a motion. Sartin does not cite any authority in support of the proposition that the Superior Court was required to appoint counsel for him *sua sponte*. At the time Sartin filed his postconviction motion in August 2012, Rule 61(e)(1) provided that the Superior Court would appoint counsel only in the exercise of discretion and for good cause shown.[10] Rule 61(e)(1) was amended in May 2013 to provide that the Superior Court would appoint counsel for an indigent defendant's first postconviction proceeding, but that amendment applied to postconviction motions filed on or after May 6, 2013 and was not made retroactive.[11] Under the circumstances of this case, Sartin has not shown that he was entitled to the *sua sponte* appointment of counsel.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

---

[10] Super. Ct. Crim. R. 61(e)(1) (2012).

[11] *Cook v. State*, 2014 WL 2949413 (Del. June 26, 2014); *Roten v. State*, 2013 WL 5808236 (Del. Oct. 28, 2013).

9